**HOGAN LOVELLS US LLP**

875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
Ira S. Greene
Scott W. Reynolds

*Attorneys for the Petitioners*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| INVERNESS DISTRIBUTION LIMITED | : | Chapter 15 Case No. |
| f/k/a MORGAN CREEK INTERNATIONAL | : | |
| LIMITED, | : | 11-_____(   ) |
| | : | |
| Company in a Foreign Proceeding. | : | |

---------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITION**

Page

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ..................................................................................3

JURISDICTION AND VENUE ..............................................................3

ARGUMENT ......................................................................................3

A.   This Case Has Been Properly Commenced Under Chapter 15............................................3

    1.   This Case Was Commenced in Accordance with Section 1515(a)..........................4

    2.   This Case Was Commenced in Accordance with Section 1515(b) ........................5

    3.   This Case Was Commenced in Accordance with Section 1515(c)..........................5

    4.   The Requirements of Section 1517 Have Been Met...............................5

        a.   The Bermuda Proceeding is a Foreign Proceeding and the Petitioners are Foreign Representatives.......................6

        b.   The Petitioners are Foreign Representatives...............................11

        c.   The Requirements of Section 1515 of the Bankruptcy Code are met............................................13

        d.   Recognition of the Bermuda Proceeding Would Not be Manifestly Contrary to Public Policy............................13

B.   The Bermuda Proceeding is a Foreign Main Proceeding ...................................16

    1.   Inverness' Registered Office and Presumed Center of Main Interests in Bermuda.......................17

    2.   Factors Demonstrating Inverness' Center of Main Interests in Bermuda..............18

        i.   Location of Inverness' Headquarters.............................21

        ii.   Location of Management ...............................22

        iii.   Location of Creditors ...................................23

        iv.   Location of Assets........................................24

        a.   Jurisdiction Whose Law Would Apply to Disputes..................26

3.      In the Event the Bermuda Proceeding is not Recognized as a Foreign Main
        Proceeding, It should be Recognized as a Foreign Non-Main Proceeding............28

4.      The Petitioners Meet the Filing Requirements of Rule 1007(a)(4) of the
        Bankruptcy Rules....................................................................................................29

C.      Mandatory Relief Under Section 1520 ...............................................................30

1.      The Petition Requests Necessary and Appropriate Relief Pursuant to
        Section 1521(a) of the Bankruptcy Code..............................................................30

2.      The Requirements for a Permanent Injunction Are Satisfied in Accordance
        With Section 1521(e) ............................................................................................32

3.      The Petitioners Request Discovery Pursuant to 1521(4) ......................................34

CONCLUSION....................................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ABKCO Industries, Inc. v. Apple Films, Inc.,*
 39 N.Y.2d 670 (NY 1976) ...............................................................................25

*Canada S. Ry. Co. v. Gebhard,*
 109 U.S. 527 (1883) ........................................................................................33

*Civic Ass'n of the Deaf of New York City, Inc. v. Giuliani,*
 915 F. Supp. 622 (S.D.N.Y. 1996) ..................................................................33

*Clarkson v. Coughlin,*
 898 F. Supp. 1019 (S.D.N.Y. 1995) ...........................................................32, 33

*Cornfeld v. Investors Overseas Servs., Ltd.,*
 471 F. Supp. 1255 (S.D.N.Y. 1979) ................................................................14

*Cunard S.S. Co. v. Salen Reefer Servs., AB,*
 773 F.2d 452 (2d Cir. 1985) ............................................................................33

*In re ABC Learning Centres Ltd.,*
 2010 WL 5439808 (Bankr. D. Del. Dec. 16, 2010) ................................7, 9, 10

*In re Artinun, S.r.L.,*
 335 B.R. 149 (Bankr. C.D. Cal. 2005) ............................................................17

*In re Basis Yield Alpha Fund (Master),*
 381 B.R. 37 (Bankr. S.D.N.Y. 2008) ..............................................................18

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,*
 374 B.R. 122 (Bankr. S.D.N.Y. 2007) ...........................................3, 18, 27, 28

*In re Betcorp Ltd.,*
 400 B.R. 266 (Bankr. D. Nev. 2009) .................................................7, 9, 18, 19

*In re Bluepoint,*
 Case No. 08-13169 (REG) (Bankr. S.D.N.Y. September 29, 2008)
 [Docket No. 24] .........................................................................................11, 13

*In re Board of Directors of Hopewell Int'l Ins. Ltd.,*
 238 B.R. 25 (Bankr. S.D.N.Y. 1999) ...............................................................25

*In re British Am. Ins. Co. Ltd.*,
  425 B.R. 884 (Bankr. S.D. Fla. 2010) ...........................................................................19, 28

*In re Chiang*,
  437 B.R. 397 (Bankr. C.D. Ca. 2010) ...........................................................................18, 20

*In re Ernst & Young, Inc.*,
  383 B.R. 773 (Bankr. D. Col. 2008) ....................................................................................27

*In re Fairfield Sentry Limited*,
  440 B.R. 60 (Bankr. S.D.N.Y. 2010) ............................................................................19, 22

*In re Hatteras,*
  Case No. 06-11304 (JMP) (Bankr. S.D.N.Y. September 2, 2006)
  [Docket No. 88] ......................................................................................................................11

*In re Hughes,*
  281 B.R. 224 (Bankr. S.D.N.Y. 2002) .................................................................................34

*In re Ionesphere Clubs, Inc.*,
  922 F.2d 984 (2d Cir. 1990) ..................................................................................................14

*In re Kingscroft Ins. Co.,*
  138 B.R. 121 (Bankr. S.D. Fla. 1992) ..................................................................................11

*In re Lehman Re,*
  Case No. 09-14884 (JMP) (Bankr. S.D.N.Y. September 24, 2009)
  [Docket No. 56] ........................................................................................................11, 13, 34

*In re Lines,*
  81 B.R. 267 (Bankr. S.D.N.Y. 1988) ............................................................................11, 13

*In re MMG, LLC*,
  256 B.R. 544 (Bankr. S.D.N.Y. 2000) .................................................................................33

*In re Saad Investments Finance Co. (No. 5) Ltd.*,
  Case No. 09-13985 (Bankr. D. Del. 2009) [Docket No. 43] .................................................18

*In re SPhinX. Ltd.*,
  351 B.R. 103 (Bankr. S.D.N.Y. 2006) ............................................................................18, 32

*In re Tri-Continental Exch.*,
  349 B.R. 627 (Bankr. E.D. Cal. 2006) ............................................................................14, 17

*JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*,
  536 U.S. 88 (2002) ...................................................................................................................9

*Lavie v. Ran*,
  406 B.R. 277 (S.D. Tex. 2009) ..........................................................19, 28

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
  825 F.2d 709 (2d Cir. 1987).....................................................................33

STATUTES

11 U.S.C. § 101(23) ............................................................................... passim

11 U.S.C. § 101(24) ............................................................................... passim

11 U.S.C § 109(b) ........................................................................................4

11 U.S.C § 150l(c)(j) ...................................................................................4

11 U.S.C. § 152l(a)(1), (a)(2), (a)(3), (a)(4) and (a)(7) ..............................31

11 U.S.C. § 152l(e) ....................................................................................32

11 U.S.C. § 304................................................................................2, 25, 26

11 U.S.C. § 362 ........................................................................................8, 30

11 U.S.C. § 362(a) ....................................................................................30

11 U.S.C. § 1501 ........................................................................................15

11 U.S.C. § 1502(2) ...................................................................................28

11 U.S.C. § 1502(3) ...................................................................................10

11 U.S.C. § 1502(4) ...................................................................................16

11 U.S.C. § 1504.....................................................................................1, 3, 4

11 U.S.C. §§ 1504, 1515, 1517, 1519, 1520................................................3

11 U.S.C. § 1506 ....................................................................................13, 14

11 U.S.C. § 1515 ................................................................................... passim

11 U.S.C. § 1515(a) .....................................................................................4

11 U.S.C. § 1515(b) .....................................................................................5

11 U.S.C. § 1515(c) .....................................................................................5

11 U.S.C. § 1516(c) ..........................................................................................17, 21

11 U.S.C. § 1517 .................................................................................................... passim

11 U.S.C. § 1517(a) .........................................................................................5, 6, 13

11 U.S.C. § 1517(a)(l) ........................................................................................11, 16

11 U.S.C. § 1517(b)(1) ..............................................................................................17

11 U.S.C. § 1517(b)(2) ..............................................................................................28

11 U.S.C. § 1518 ......................................................................................................19

11 U.S.C. § 1519 ..................................................................................................2, 30

11 U.S.C. § 1520(a) ..................................................................................................30

11 U.S.C. § 1520(a)(1) ..............................................................................................30

11 U.S.C. § 1521 ........................................................................................................2

11 U.S.C. § 1522(a) ......................................................................................30, 31, 32

11 U.S.C. § l501(b)(l) .................................................................................................4

28 U.S.C. §§ 157 and 1334 and section 1501 ...........................................................3

28 U.S.C. § 157(b)(2)(P) ............................................................................................3

28 U.S.C. § 1410(1) ....................................................................................................3

28 U.S.C. § 1410(c) ..................................................................................................26

Section 1(b) of the International Banking Act of 1978 ...............................................4

## OTHER AUTHORITIES

1-4 COLLIER ON BANKRUPTCY P 4.04 ......................................................................26

Fed. R. Bank. P. 1007(a)(4) .........................................................................................1

Fed. R. Bank. P. 1007(a)(4) ................................................................................29, 30

Fed. R. Bank. P. 7007.1 ............................................................................................29

<u>**MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITION**</u>

Petitioners, Michael Morrison and Charles Thresh, both of KPMG Advisory Limited (the "**Petitioners**"), in their capacity as the duly appointed foreign representatives, as defined in section 101(24) of title 11 of the United States Code (the "**Bankruptcy Code**"), of Inverness Distribution Limited ("**Inverness**" or the "**Company**"), a debtor in a foreign proceeding, as defined in Bankruptcy Code section 101(23), pending before the Supreme Court of Bermuda (the "**Bermuda Court**") under Matter No. 2011 No. 60 (the "**Bermuda Proceeding**"), through their attorneys Hogan Lovells US LLP, submit this memorandum of law (the "**Memorandum**") in support of (i) the Official Form B1 Chapter 15 (the "**Form Petition**") filed under chapter 15 ("**Chapter 15**") of the Bankruptcy Code and the accompanying *Verified Petition of Foreign Representatives Michael Morrison and Charles Thresh in Support of Application of Inverness Distribution Limited for Recognition of Foreign Main Proceeding Pursuant to 11 U.S.C. § 1517 and Seeking Related Relief* (the "**Verified Petition**", together with the Form Petition, the "**Petition**") pursuant to chapter 15 of the Bankruptcy Code, seeking recognition of a foreign main proceeding and related relief and respectfully represent as follows:

<u>**PRELIMINARY STATEMENT**</u>

The Petitioners, as foreign representatives of Inverness, have commenced this Chapter 15 case pursuant to Bankruptcy Code section 1504 by filing the Petition contemporaneously herewith accompanied by all certifications, statements, lists and documents required pursuant to section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), seeking recognition of, and other related relief necessary to aid in, the Bermuda Proceeding.

Inverness is an exempted limited liability company incorporated under the laws of Bermuda, with a registered office located at Crown House, 4 Par-la-Ville Road, Hamilton

HM08, Bermuda. Until March 2, 2011, Inverness' registered office was located at Clarendon House, 2 Church Street, Hamilton HM11, Bermuda. Inverness was created to enter into contractual relationships to distribute and otherwise exploit various films outside of the United States, Canada and their respective commonwealths, territories and possessions (collectively, the "**Foreign Territory**").

On February 28, 2011, the Bermuda Court entered an Order appointing the Petitioners as Joint Provisional Liquidators of Inverness (the "**Provisional Order**"). The Provisional Order authorizes the Petitioners to commence a proceeding in the United States seeking recognition of the Bermuda Proceeding under chapter 15 of the Bankruptcy Code.

Chapter 15 of the Bankruptcy Code authorizes this Court to: (i) recognize a "foreign proceeding," as defined under section 101(23) of the Bankruptcy Code, upon the proper commencement of a case under Chapter 15 by a "foreign representative," as defined under section 101(24) of the Bankruptcy Code; and (ii) grant assistance in the United States to such foreign representative in connection with the foreign proceeding, including the grant of relief pursuant to sections 1519 and 1521 of the Bankruptcy Code.[1]

The Petition satisfies all of the requirements set forth in section 1515. Moreover, the relief requested herein is necessary and appropriate under Chapter 15. Recognition of the Bermuda Proceeding, as well as the other relief requested by the Petitioners, is consistent with the goals of international cooperation and assistance to foreign courts embodied in Chapter 15. Further, it is consistent with the relief afforded by this Court in other ancillary proceedings involving foreign companies, both under former section 304 and now under Chapter 15.

---

[1] Unless otherwise indicated, all sections refer to sections of the Bankruptcy Code, and Chapter 15 refers to chapter 15 of the Bankruptcy Code.

## BACKGROUND

This Court is respectfully referred to the Verified Petition and *Declaration of Charles Thresh in Support of Verified Petition and Related Relief Pursuant to 11 U.S.C. §§ 1504, 1515, 1517, 1519, 1520, AND 1521* (the "**Thresh Declaration**"), which set forth the relevant facts in much greater detail and are incorporated by reference herein.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(P).

Venue with respect to the Petition is proper pursuant to 28 U.S.C. § 1410(1) because Inverness' principal assets in the United States consisting of (i) a bank account held with Barclays Bank plc, at its New York branch, and (ii) a retainer held by the Petitioners' counsel, Hogan Lovells US LLP, at its New York office, are located in this district. Furthermore, payments under Inverness' Distribution Agreements (as defined below) flow through the Agent's (as defined below) office in this district. In addition, Inverness' creditors holding the majority of Inverness' outstanding liabilities each have offices and established centers of business in this district.

## ARGUMENT

### A.    This Case Has Been Properly Commenced Under Chapter 15

Section 1504 provides that a case under Chapter 15 is commenced by the filing of a petition for recognition of a foreign proceeding under section 1515. See 11 U.S.C. § 1504; see also *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the

Bankruptcy Code."), aff'd, 389 B.R. 325 (S.D.N.Y. 2008).  Chapter 15 applies to the Bermuda Proceeding because the Petitioners are seeking assistance from this Court in connection with that foreign proceeding. See 11 U.S.C. § l501(b)(l); see also 11 U.S.C. § 1504 (Chapter 15 case is commenced by filing a petition for recognition of a foreign proceeding).[2]  Accordingly, the Company is eligible for protection under Chapter 15.

To comply with the requirements of section 1515, clear procedural and objective requirements must be satisfied by the Petitioners.  As more fully discussed below, the Petitioners respectfully submit that these procedures and requirements have been satisfied.

### 1.     This Case Was Commenced in Accordance with Section 1515(a)

Section 1515(a) provides that an application for recognition be commenced by a foreign representative applying to the "[bankruptcy] court for recognition of a foreign proceeding in which the foreign representative has been appointed." 11 U.S.C. § 1515(a).  As discussed below with respect to the requirements for such recognition under section 1517 of the Bankruptcy Code, Petitioners are foreign representatives appointed in a foreign proceeding and have complied with the process outlined in section 1515(a) by filing the Petition, the Verified Petition and this Memorandum.

---

[2]        Section 1501(c)(1), however, provides that Chapter 15 does not apply to "a proceeding concerning an entity, other than a foreign insurance company, identified by exclusion in section 109(b)." 11 U.S.C § 150l(c)(j).  Aside from foreign insurance companies doing business in the United States (which are eligible for Chapter 15 relief), three (3) types of entities are identified by exclusion under section 109(b): (a) railroads; (b) certain domestic financial institutions; and (c) "a foreign bank, savings bank, cooperative bank, savings and loan association, building and loan association, or credit union that has a branch or agency (as defined in Section 1(b) of the International Banking Act of 1978) in the United States." See 11 U.S.C § 109(b).  The Company is not a railroad, a domestic financial institution or foreign bank.  See Thresh Declaration, at ¶¶ 5-7.

### 2. This Case Was Commenced in Accordance with Section 1515(b)

To establish a basis for recognition under Chapter 15, the petition must be supported by documentation on which the Court may ground recognition. Section 1515(b) provides:

A petition for recognition shall be accompanied by:

(1)    a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

(2)    a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

(3)    in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

11 U.S.C. § 1515(b).

Here, the Verified Petition is accompanied by a certified copy of the Provisional Order, which also appoints the Petitioners as the Liquidators. See Exhibit A to Verified Petition.

### 3. This Case Was Commenced in Accordance with Section 1515(c)

Section 1515(c) provides that a "petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative." 11 U.S.C. § 1515(c). *The Statement of Foreign Representative Michael Morrison and Charles Thresh Pursuant to 11 U.S.C. § 1515(c)* (the "**Section 1515(c) Statement**"), attached to the Verified Petition as Exhibit B, provides that the Bermuda Proceeding is the only foreign proceeding with respect to the Company that currently is known to the Petitioners.

### 4. The Requirements of Section 1517 Have Been Met

The requirements for recognition of a foreign proceeding are set forth in section 1517(a), which provides, in pertinent part, that:

after notice and hearing, an order recognizing a foreign proceeding shall be entered if -

(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;

(2) the foreign representative applying for recognition is a person or body; and

(3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a).

As set forth in greater detail below, each of the requirements for recognition prescribed by section 1517(a), as well as those required by the Bankruptcy Rules, has been satisfied in respect of the Petition and the Bermuda Proceeding.

### a. *The Bermuda Proceeding is a Foreign Proceeding and the Petitioners are Foreign Representatives*

Section 1517(a) of the Bankruptcy Code establishes two principal requirements for recognition: (1) the Bermuda Proceeding must qualify as a "foreign proceeding" (main on nonmain), and (2) the Petitioner must qualify as a "foreign representative."

### The Bermuda Proceeding is a Foreign Proceeding

Section 101(23) defines a "foreign proceeding" as

a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

This definition imposes the following requirements for a proceeding to be considered a "foreign proceeding": (1) it must be a proceeding; (2) that is either judicial or administrative in character; (3) that is collective in nature; (4) that is being conducted in a foreign country; (5) that

is authorized or conducted under law relating to insolvency or adjustment of debts; (6) in which the debtor's assets and affairs are subject to control or supervision of a foreign court; and (7) which is for the purpose of reorganization or liquidation. See *In re ABC Learning Centres Ltd.*, 2010 WL 5439808 at *5 (Bankr. D. Del. Dec. 16, 2010) (citing *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)).

First, the Bermuda Proceeding is clearly qualifies as a "proceeding." "In the context of corporate insolvencies, the hallmark of a 'proceeding' is a statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets." *In re ABC Learning Centres*, 2010 WL 5439808, at *5 (quoting *In re Betcorp*, 400 B.R. at 278). As discussed in the *Declaration of Kehinde George in Support of Application of Inverness Distribution Limited for Recognition of Foreign Proceeding* (the "**George Declaration**"), filed contemporaneously herewith, the Bermuda Proceeding is a compulsory winding up proceeding. A provisional liquidation proceeding or winding-up proceeding in Bermuda is governed by the Bermuda Companies Act 1981 (the "**Companies Act**") and the Companies (Winding Up) Rules 1982 and Bermuda Common Law Principles, which are based on the English Companies Act 1948, related statutory rules and English common law. See George Declaration at ¶ 8. In Bermuda, a compulsory winding-up proceeding is commenced by the filing of a petition with the Bermuda Court seeking a winding-up order, which, if granted, results in the commencement of a liquidation of the insolvent company. *Id.* at ¶ 10. The liquidation is conducted under the control of the Bermuda Court, and is roughly analogous to a proceeding under chapter 7 of the Bankruptcy Code. *Id.*

The Bermuda Proceeding is pending before the Bermuda Court, a court generally responsible for the resolution of insolvency cases in Bermuda. Here, the Bermuda Court has

exercised its authority by issuing the Provisional Order,[3] which resulted in an automatic statutory stay of actions and proceedings against the Company, with the effect that actions may not be commenced or continued against the Company without leave of the Bermuda Court and subject to such terms as the Bermuda Court may impose. This stay is strikingly similar to the automatic stay provided for under section 362. Given the foregoing, the Bermuda Proceeding is clearly a proceeding as contemplated under Chapter 15.

Second, the Bermuda Proceeding is both administrative and judicial in nature. In Bermuda, a provisional liquidator may be appointed in a compulsory winding-up immediately following the presentation of the winding-up petition and before the making of a winding-up order. Usually, a provisional liquidator will remain in office until the Bermuda Court appoints a permanent liquidator following separate meetings of the shareholders and creditors of a company held after the making of a winding-up order, at which time they vote on who the permanent liquidator should be. In practice, the persons acting as provisional liquidator will usually be appointed as permanent liquidator. George Declaration at ¶ 13. Under Bermuda Law, provisional liquidators are officers of the Court and their role is usually to ascertain, collect and preserve the assets of the company pending resolution of the winding-up petition. George Declaration at ¶ 21. They are required to be independent of the prior management of the Company and its creditors and are required to behave in an even-handed fashion between creditors. _Id._ Specifically, provisional liquidators have the duty to obtain and protect an insolvent company's property in accordance with the statutory regime set out in the Companies Act. _Id._ The exercise of a provisional liquidator's powers, however, is subject to the control and supervision of the Bermuda Court, which entitles a person dissatisfied by any act, omission or

---

[3]     A copy of the Provisional Order is attached to the Verified Petition as <u>Exhibit A</u>.

decision of a provisional liquidator to apply to the Bermuda Court for the reversal or modification of such act or decision. _Id._ at ¶ 22. Thus, while most of the Petitioners' tasks are administrative in nature (i.e. collecting assets), the Bermuda Proceeding is also judicial in character because it is pending before and under the supervision of the Bermuda Court. _Id._

Third, the Bermuda Proceeding is a collective proceeding. "A proceeding is collective if it considers the rights and obligations of all creditors." _In re ABC Learning Centres_, 2010 WL 5439808, at *6 (quoting _In re Betcorp_, 400 B.R. at 281). The Bermuda Proceeding is a collective proceeding because it is being conducted for the benefit of Inverness' creditor body as a whole, and not just a single creditor. George Declaration at ¶ 21. The Petitioners have the duty to obtain and protect Inverness' property pursuant to the provisions of the Companies Act which further reflect the collective nature of the Bermuda proceedings generally. _Id._ The Companies Act is a statutory framework which sets the priority for payment of debts upon the distribution of a company's assets and gives Bermudian courts the authority to, _inter alia_, (i) stay any action against an insolvent company, (ii) vest an insolvent company's assets with a liquidator, (iii) void any disposition of an insolvent company's property or the transfer of such company's shares (or other alteration in the status of the company's members) if made after the commencement of the winding-up, and (iv) avoid any fraudulent preferences made within six months of the winding up. _Id._ at ¶¶ 19-23.

Fourth, as the proceeding is pending in Bermuda, a British territory, it is being conducted in a foreign country. See e.g., _JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd._, 536 U.S. 88, 98-99 (2002) (recognizing citizens of the British Virgin Islands to be "citizens or subjects" of the United Kingdom for the purposes of diversity jurisdiction).

Fifth, the Bermuda Proceeding is authorized and being conducted under the Companies Act, which, as explained above, is the Bermudian law that governs the insolvency of companies in Bermuda.  See George Declaration at ¶ 8.

Finally, the Companies Act requires that Inverness' assets and affairs are subject to the control and supervision of the Bermuda Court, a court generally responsible for the resolution of insolvency cases in Bermuda for the purpose of reorganization or liquidation.  Specifically, the Bermuda Court can (i) stay the winding-up proceedings, (ii) require a company's officers or agents to deliver or otherwise transfer the company's property, including its books and records, to the liquidator, (iii) remove and replace a liquidator for cause, and (iv) summon third parties with information about or property of a company or its affairs to be examined, to produce books and papers, and to order their apprehension if they fail to appear.  See George Declaration at ¶ 23; see 11 U.S.C. § 1502(3) ("'[F]oreign court' means a judicial or other authority competent to control or supervise a foreign proceeding."); see e.g., *In re ABC Learning Centres*, 2010 WL 5439808 at *9 (holding Australian Court had control over liquidation proceeding where, *inter alia*, court had authority to terminate the liquidation, require property to be delivered to the liquidator, issue arrest warrants and remove a liquidator for cause).  As described above, the express purpose of the Bermuda Proceeding under the Companies Act is the orderly administration, collection and preservation of the Company's assets pending the resolution of the winding-up petition.  See George Declaration at ¶ 21.

Accordingly, the Bermuda Proceeding is precisely the sort of proceeding the enactment of Chapter 15 was meant to assist, and falls within the definition of a "foreign proceeding" set forth in section 101(23).  Accordingly, the Bermuda Proceeding satisfies all of the requirements of section 101(23)  and qualifies as a foreign proceeding.  Moreover, there is ample precedent in

this and other courts that a provisional liquidation under Bermuda law is a "foreign proceeding" under section 101(23).[4]

### b. The Petitioners are Foreign Representatives

The Petitioners are a foreign representative under section 101(24). Section 101(24) defines a "foreign representative" as:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

Pursuant to the Provisional Order, the Petitioners were appointed by the Bermuda Court and are duly authorized to act as the joint provisional liquidators of the Company. As explained in the George Declaration, upon the appointment of joint provisional liquidators, all of the powers of the directors over the company cease and are assumed by the joint provisional liquidators. See George Declaration at ¶ 20. Accordingly, the power to act in the name of the Company is now vested in the Petitioners. The Petitioners are the sole persons that can speak for the Company and the only persons who have the authority and power to give instructions on behalf of the Company. *Id.*[5]

---

[4] Moreover, there is ample precedent in this Court that a provisional liquidation under Bermuda law is a "foreign proceeding." See *In re Lehman Re*, Case No. 09-14884 (JMP) (Bankr. S.D.N.Y. September 24, 2009) [Docket No. 56] (explicitly recognizing that a Bermuda winding up proceeding "is a "foreign proceeding" within the meaning of sections 101(23) and 1517(a)(1) of the Bankruptcy Code"); *In re Bluepoint*, Case No. 08-13169 (REG) (Bankr. S.D.N.Y. September 29, 2008) [Docket No. 24] (provisional liquidation under Bermuda law is a "foreign proceeding"); *In re Hatteras*, Case No. 06-11304 (JMP) (Bankr. S.D.N.Y. September 2, 2006) [Docket No. 88] (recognizing provisional liquidation under the Companies Act as "foreign proceeding"); *In re Lines*, 81 B.R. 267, 273 (Bankr. S.D.N.Y. 1988) (recognizing that a proceeding pending under the Companies Act is a "foreign proceeding"); *In re Kingscroft Ins. Co.*, 138 B.R. 121, 125 (Bankr. S.D. Fla. 1992) (finding that proceedings before the Supreme Court constitute "foreign proceedings").

[5] Nevertheless, pursuant to the Companies Act, a creditor may apply to the Bermuda Court with respect to any exercise or proposed exercise of any of the powers of a provisional liquidator. Id. at ¶ 22

Although, pursuant to the Companies Act, the powers of joint provisional liquidators may be limited by the order of appointment, the Provisional Order did not so limit the powers of the Petitioners. _Id._ Rather, the Provisional Order enumerates a twenty-six (26) broad powers, including but not limited to the following:

- to continue the business of the Company under the supervision of the Bermuda Court insofar as is necessary to preserve value of the Company;

- to review, secure, take possession of and copy any books, papers, writings, financial records, documents and records relating to the accounts or audit of the Company's accounts that are located in the offices of its auditors or any other person both in this jurisdiction and in any other jurisdiction;

- to conduct such investigations and obtain such information as is necessary to locate, discover the status of, protect, secure, take possession of, collect the assets and determine the liabilities of the Company, or to enable these proceedings to move forward in an expeditious manner; and

- to do all such things as may be necessary or expedient for the protection of the Company's assets or property.

See Provisional Order at ¶ 3.

In addition, the Bermuda Court has authorized the Petitioners to seek the assistance of this Court under the provisions of Chapter 15 by explicitly authorizing the Petitioners to commence "all other proceedings outside Bermuda as may be necessary to have their appointment recognized and to protect the assets of the Company in particular but not limited to applications in the Netherlands, the US and the UK" and to retain US counsel in connection with the same. _Id._

Accordingly, the Petitioners are the sole persons that have the authority and power to act in the name of Inverness or to give instructions on behalf of Inverness, including the power to compromise claims, commence litigation and to dispose of Inverness' property, and have been directing the operations and maintaining the estate of Inverness in Bermuda since the commencement of the Bermuda Proceeding. <u>See</u> Thresh Declaration at ¶ 32.

Moreover, this Court has previously acknowledged that a provisional liquidator appointed in Bermuda is a "foreign representative." <u>See</u> <u>e.g.</u>, *In re Lehman Re Ltd*., Case No. 09-14884 [Docket No. 56] (provisional liquidators appointed pursuant to Bermuda law are "foreign representatives"); *In re Bluepoint*, Case No. 08-13169 (REG) [Docket No. 24] (same); *see also Lines*, 81 B.R. at 273 (recognizing provisional liquidators appointed by Bermuda Court as "foreign representatives").

From the evidence submitted on behalf of the Petitioners, namely the Provisional Order, the Verified Petitions (and all exhibits thereto), the Thresh Declaration (and all exhibits thereto) and the George Declaration (and all exhibits thereto), it is clear that the Petitioners are duly authorized to act as the foreign representatives in this Chapter 15 case and are the Company's "foreign representative" consistent with the definition set forth in Section 101(24).

### c. The Requirements of Section 1515 of the Bankruptcy Code are met.

As outlined above, the Petition satisfied the requirements of section 1515.

### d. Recognition of the Bermuda Proceeding Would Not be Manifestly Contrary to Public Policy

The final requirement for recognition under section 1517(a) is that the relief sought not be "manifestly contrary to the public policy of the United States." <u>See</u> 11 U.S.C. § 1517(a) (providing that the entry of an order recognizing a foreign proceeding is "subject to section 1506" of the Bankruptcy Code). Section 1506 provides that nothing in Chapter 15 prevents the

court from refusing to take an action otherwise required by Chapter 15 if such action would be manifestly contrary to the public policy of the United States. 11 U.S.C. § 1506. While permitting courts to refuse to act where such action would be manifestly contrary to public policy, section 1506 has been found to be an exception that Congress intended to be narrowly construed. See Tri-Continental, 349 B.R. at 638 ("The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States . . . [Its purpose] . . . is to emphasize that public policy exception should be interpreted restrictively and that [provision] is only intended to be invoked under exceptional circumstances concerning matters of fundamental importance for the enacting State.") (citing the "Guide to Enactment to the UNCITRAL Model Law on Cross-Border Insolvency," U.N. Gen. Ass., UNCITRAL 30th Sess., U.N. Doc. AICN.91442 (1997)).

The relief requested by the Petitioners is not manifestly contrary to, but rather consistent with, the public policy of the United States. Specifically, one of the fundamental goals of the Bankruptcy Code is to centralize disputes involving a debtor. See e.g., In re Ionesphere Clubs, Inc., 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . . .") (internal citations omitted); Cornfeld v. Investors Overseas Servs., Ltd., 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (noting that "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction.").

The Bermuda Proceeding provides for a centralized process to assert and resolve claims against Inverness' estate, and, ultimately, to make distributions to Inverness' creditors. Recognizing the Bermuda Proceeding, enjoining certain actions of Inverness' principals against

Inverness' assets, as well as recognizing the Petitioners' exclusive authority to control, manage, use and identify Inverness' assets is necessary in order for the Petitioners to efficiently administer Inverness' assets in one proceeding and prevent a piecemeal disposition or degradation of assets that would undermine the Bermuda proceeding and harm Inverness and its creditors. Accordingly, recognition of the Bermuda Proceeding under Chapter 15 will assist the orderly winding-up of Inverness under the supervision of the Bermuda Court and is demonstrably consistent with the public policy of the United States.

Furthermore, recognition of the Bermuda Proceeding will be consistent with the purpose of Chapter 15. Section 1501 provides, in pertinent part that:

> The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of -
>
> (1) cooperation between - . . . (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
> * * *
>
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> (4) protection and maximization of the value of the debtor's assets.

11 U.S.C. § 1501.

The relief requested by the Petitioners is consistent with, and critical to effectuate, the objectives of Chapter 15 for several reasons. First, recognition of the Bermuda Proceeding would foster cooperation between the Bermuda Court and courts of the United States. By granting recognition of the Bermuda Proceeding, granting injunctive relief and providing Petitioners with access to Inverness' books and records, this Court would in effect be

cooperating with the Bermuda Court in the liquidation of Inverness and satisfaction of Inverness' creditors.

Second, and more specifically, recognition of the Bermuda Proceeding would promote the fair and efficient administration of the Bermuda Proceeding and protect the interests of all creditors and interested entities. By recognizing the Bermuda Proceeding and granting the relief requested, the process of resolving claims against Inverness will be centralized in Bermuda. Creditors would be required to assert their claims in accordance with Bermuda law in the Bermuda Proceeding and any disputes would be subject to the uniform jurisdiction of one tribunal, the Bermuda Court. Moreover, by enjoining the actions of Inverness' principals and recognizing the authority of the foreign representatives over the assets of Inverness, recognition of the Bermuda Proceeding will ensure the full realization of the value of Inverness' assets for the benefit of all creditors. Absent recognition, the uniform and orderly winding-up of Inverness and the maximization of Inverness' assets in the Bermuda Proceeding will be jeopardized.

Finally, the relief requested would protect Inverness' assets from the actions of Inverness' former management, and will provide Inverness with access to information necessary to maximize the value of Inverness' assets. As such, recognition will further the objectives of Chapter 15 by protecting Inverness' assets and is entirely consistent with the public policy of the United States.

**B.**      <u>**The Bermuda Proceeding is a Foreign Main Proceeding**</u>

A foreign proceeding may be recognized under section 1517 as either (i) a "foreign main proceeding" or (ii) a "foreign nonmain proceeding." <u>See</u> 11 U.S.C. § 1517(a)(l). A "foreign main proceeding" is defined as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). Under the Bankruptcy Code, where a foreign proceeding is pending the country in which the debtor has its center of main interests,

then such proceeding *must* be recognized as a foreign main proceeding. 11 U.S.C. § 1517(b)(1) (emphasis added). Here, the facts presented by the Petitioners support a finding that Inverness' center of main interests is Bermuda and, thus, the Bermuda Proceeding is a foreign main proceeding.

**1. Inverness' Registered Office and Presumed Center of Main Interests in Bermuda**

The Bankruptcy Code does not define "center of main interests." It does, however, provide that in the absence of evidence to the contrary, a foreign debtor's registered office is presumed to be the center of the debtor's main interests. 11 U.S.C. § 1516(c); *In re Tri-Continental Exch.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006) ("In effect, the registered office . . . is evidence that is probative of, and that may in the absence of other evidence be accepted as proxy for, 'center of main interests.'"); *In re Artinun, S.r.L.*, 335 B.R. 149, 159 (Bankr. C.D. Cal. 2005) (noting that debtor's center of main interests was Rome, the location of its registered office).

Thus, section 1516(c) creates a rebuttable presumption in favor of the location of the debtor's registered office as the debtor's center of main interests. Here, from the formation of Inverness in 2003, Inverness' registered office has at all times been located in Hamilton, Bermuda. Until March 2, 2011, Inverness' registered office was located at Clarendon House, 2 Church Street, Hamilton HM11, Bermuda. Inverness' registered office is currently located at Crown House, 4 Par-la-Ville Road, Hamilton HM08, Bermuda. <u>See</u> Thresh Declaration at ¶ 5. Accordingly, in accordance with section 1517(b), absence evidence to the contrary, Bermuda is Inverness' center of main interests.

### 2.    Factors Demonstrating Inverness' Center of Main Interests in Bermuda

Notwithstanding the foregoing, in the event further inquiry is required, bankruptcy courts have identified the following factors as relevant in determining the location of a debtor's center of main interests ("**COMI**"): (i) the location of the debtor's headquarters; (ii) the location of those who actually manage the debtor; (iii) the location of the debtor's primary assets; (iv) the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or (v) the jurisdiction whose law would apply to most disputes.  See *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007) *aff'd* 389 B.R. 325 (S.D.N.Y. 2008) (citing *In re SPhinX. Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).  These factors, however, are not exhaustive or necessarily applicable in all cases.  See *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 47 (Bankr. S.D.N.Y. 2008) (citing the *Bear Stearns* factors and further noting that the court may also look to other factors); see also Transcript of Proceedings at 15-16, *In re Saad Investments Finance Co. (No. 5) Ltd.*, Case No. 09-13985 (Bankr. D. Del. 2009) [Docket No. 43] (considering factors other than those listed in *Bear Stearns* in making determination that debtor's COMI was in the Cayman Islands).

Additionally, in evaluating a debtor's center of main interest, courts look at those factors that are objectively "ascertainable, and perceived, by third parties." *Betcorp*, 400 B.R. at 290 ("[C]ourts analyze a variety of factors to discern, objectively, where a particular debtor has its principal place of business. This inquiry examines the debtor's administration, management, and operations along with whether reasonable and ordinary third parties can discern or perceive where the debtor is conducting these various functions"); see also *In re Sphinx, Ltd.*, 351 B.R. at 119 (basing COMI determination on objective factors); *In re Chiang*, 437 B.R. 397, 403 (Bankr.

C.D. Ca. 2010) ("the location of the CoMI is an objective determination based on the viewpoint of third parties (usually creditors).").

In evaluating these factors for a determination of a debtor's center of main interest, courts have increasingly examined the relevant factors from a time perspective that is no earlier than the date of the filing of the Chapter 15 petition. See e.g., *Betcorp*, 400 B.R. at 290-92; see also *Lavie v. Ran*, 406 B.R. 277, 283 (S.D. Tex. 2009) ("Chapter 15 requires the U.S. court to make an independent finding [regarding COMI] *at the time the petition for recognition is filed* in the U.S. court, rather than hindsight . . .") (emphasis in original); *In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 910 (Bankr. S.D. Fla. 2010) (explaining that the language of sections 1517 and 1518 of the Code requires that the temporal focus "for purposes of a court making a determination under section 1517(b)(l), can be *no earlier than the date the chapter 15 petition was filed*.") (emphasis supplied).

In *In re Fairfield Sentry Limited*, 440 B.R. 60 (Bankr. S.D.N.Y. 2010), this Court addressed the issue of what date is relevant to measuring a debtor's center of main interests, and held in favor of a totality of the circumstances approach in order to protect against "an opportunistic shift to establish COMI (i.e., insider exploitation, untoward manipulation, overt thwarting of third party expectations)." *Id.* at 66. However, this Court also recognized that "where, by necessity and in good faith, a foreign representative 'relocates all of the primary business activities of the debtor to his location (or brings business to a halt), thereby causing other parties to look to the judicial manager as the location of [the] debtor's business,' the debtor's COMI may 'become lodged with the foreign representative.'" *Id.* at 65 (citing *In re British Am. Ins. Co. Ltd.*, 425 B.R. at 914). Thus, the location of the Debtor's primary business activities conducted after the filing of the Chapter 15 petition is relevant to a determination of a

debtor's COMI, and absent bad faith, the COMI may be found to lie with a debtor's foreign representative.

As explained below, many of the factors relevant to determining Inverness' center of main interest point to more than one jurisdiction. However, a debtor may have only one COMI. *Chiang*, 437 B.R. at 403 ("[A] debtor may not have more than one CoMI . . . In addition, a debtor must have a CoMi and it must be in a specific country.").

In this case, the preponderance of the evidence demonstrates that Inverness' COMI is Bermuda: (i) Inverness' registered office has at all times, since its formation in 2003, been located in Hamilton, Bermuda; (ii) Inverness was and is headquartered in Bermuda because it maintained no office other than its registered office in Bermuda and the Petitioners are indisputably headquartered in Bermuda; (iii) since their appointment on February 28, 2011, the Petitioners, in their capacity as court appointed officers, have directed the administration and management of Inverness from Bermuda, maintained certain of Inverness' bank accounts, known books and records in Bermuda and operated the company in Bermuda; (iv) the situs of Inverness' assets, the bulk of which consist of contractual rights and intangible personal property, is properly viewed as being located at Inverness' registered office in Bermuda; (v) all of the security documents that secure the Lenders'[6] charge over the Company's collateral under the Credit Agreement are registered at the Bermuda Register of Companies in accordance with the Companies Act; and (vi) the creditors holding the majority of claims against Inverness, while themselves located in multiple jurisdictions, have identified Bermuda as the appropriate forum to address their claims. There is no alternative jurisdiction for Inverness' center of main interests.

---

[6]     All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Verified Petition.

As such, the presumption of section 1516(c) is not rebutted and Inverness' COMI should be deemed to lie in Bermuda.

<em>i.    Location of Inverness' Headquarters</em>

As noted above, Inverness was incorporated in Bermuda and has, since its inception in 2003, maintained its registered office there.  Upon information and belief: (1) Inverness had no other office prior to the appointment of the Petitioners; (2) Inverness had no employees prior to the appointment of the Petitioners, other than professionals located and acting in Bermuda on behalf of the Inverness; (3) promotional materials, financial statements, reports and other written materials identified Bermuda as the location of Inverness' business; (4) legal agreements and other correspondence directed notices to be sent to Inverness at its Bermuda headquarters; (5)  no evidence suggests that Inverness pays taxes in the United States or is registered to do business in any state; and (6) Inverness was specifically and legitimately structured so that all business undertaken and performed by Inverness occurred outside of the United States.  As such, there is no jurisdiction other than Bermuda that could or should be considered to be Inverness' headquarters.  In fact, the creditors that applied to the Bermuda Court for the appointment of provisional liquidators identified Bermuda as the appropriate jurisdiction in which to commence proceedings against Inverness, evidencing their objective expectation that they were dealing with a company headquartered in Bermuda.

While Inverness is an "exempted company",[7] such status does not preclude Bermuda from being Inverness' COMI.  Exempt companies cannot generally carry out business in Bermuda, but such restrictions are irrelevant to the analysis regarding Inverness' center of main

---

[7]    Under Bermuda law, an Exempted Company is incorporated for the purpose of doing business outside Bermuda.  George Declaration at ¶ 9.

interests because they do not impact the ability of Inverness to have a principal place of business in Bermuda and to administer its interests there. The status of Inverness as an exempt company therefore does not alter the analysis herein regarding the factors that support Inverness' center of main interests properly lying with Bermuda. See e.g., *In re Fairfield Sentry Ltd*., 440 B.R. at 60 (holding winding down proceeding in the British Virgin Islands to be foreign main proceeding even though the Memorandum of Association for company contained restrictions on ability of company to carry out business in the BVI).

Moreover, the Petitioners maintain offices in Bermuda, with over 180 employees delivering audit, tax and advisory services to a number of local and international companies. Since their appointment, the Petitioners, in their capacity as liquidators, have directed the administration and management of Inverness from Bermuda, maintained Inverness' bank accounts in Bermuda, and maintained Inverness' books and records in Bermuda. Thresh Declaration at ¶¶ 32. As such, when viewed from either prior to or immediately following the date the Provisional Order was entered, Inverness' headquarters are properly viewed as being centered in Bermuda.

### ii.     *Location of Management*

The management of Inverness' is now firmly located with the Petitioners in Bermuda. As explained above, under the Companies Act, upon commencement of the Bermuda Proceeding, all of the powers of Inverness' officers and directors over Inverness ceased and were assumed by the Petitioners, including the authority and power to act in the name of Inverness or to give instructions on behalf of Inverness. See George Declaration at ¶ 20. As explained above, the officers and directors of Inverness retain only residual power for the purpose of challenging the Bermuda Proceeding, but cease to have any powers, functions or duties with respect to the management or operation of Inverness upon commencement of the Bermuda Proceeding. Since

their appointment as Joint Provisional Liquidators, the Petitioners and their staff have actively managed Inverness and all of its business affairs from Bermuda.  <u>See</u> Thresh Declaration at ¶¶ 32.  Thus, since the appointment of the Petitioners as provisional liquidators, any ambiguity as to the location of Inverness' management has been resolved in favor of Bermuda.

In addition, the Petitioners have contracted for services from several providers that are organized under the laws of Bermuda and have offices and employees in Bermuda, and, upon information and belief, Inverness did the same prior to the appointment of the Petitioners. Thresh Declaration at ¶ 32 .

Prior to the appointment of the Petitioners as provisional liquidators, Inverness was managed primarily by its sole shareholder, director and Chief Executive Officer, Mr. James Robinson, a resident of California.  <u>See</u> Thresh Declaration at ¶ 6.  Other management functions were performed by officers that held positions across various affiliated entities, and who were primarily located in the United States.  However, as explained in the Thresh Declaration, upon information and belief,  Mr. Robinson's equity interests in Inverness have no value due to Inverness' insolvency.  The Petitioners have also been advised by representatives of the Lenders that Inverness' prior management had a conflict of interest and that such management has sacrificed the value of Inverness' assets to benefit other entities affiliated with Robinson.  As such, the location of Mr. Robinson and the other persons involved in managing Inverness' through its affiliates in the United States should be given little, if any, weight in determining Inverness' center of main interests.

### iii.  *Location of Creditors*

The creditors that will be most affected by the Bermuda Proceeding and the liquidation of Inverness are the Lenders, as Inverness' largest creditors.  The Agent, in its capacity as a Lender, is the largest creditor and is located in London, England. The other Lenders are located in

England, the Netherlands, and Ireland. Upon information and belief, Inverness has other secured creditors and unsecured creditors, which will also be affected by the Bermuda Proceeding. Thresh Declaration at ¶¶ 17-18. Such other creditors are presumed to be similarly located in various jurisdictions. Thus, Inverness' creditors are not uniformly located in any one jurisdiction.

While not located in Bermuda, Inverness' creditors have demonstrated that they objectively view Bermuda to be the center of Inverness' business. First, the Lenders have identified Bermuda as the appropriate jurisdiction in which to commence liquidation proceedings against Inverness by applying for the commencement of the Bermuda Proceeding and the appointment of the Petitioners. Second, several of Inverness' creditors have identified Bermuda as the appropriate jurisdiction in which to record their security agreements. For example, the Lenders registered the security agreements securing the obligations of Inverness under the Credit Agreement at the Bermuda Register of Companies in accordance with the Companies Act. _Id._ at ¶ 19. Similarly, the Directors Guild of America, Inc., Screen Actors Guild, Inc. and Writers Guild of America, Inc. (the "**Guilds**") registered a mortgage over the net proceeds for a motion picture called "Driven", which was granted to secure obligations under a Security Agreement, dated October 3, 2006 between Inverness and the Guilds, with the Bermuda Register of Companies. Such actions demonstrate that Inverness' creditors, while not themselves located in Bermuda, identify Bermuda as the appropriate jurisdiction in which to adjudicate their claims and to liquidate Inverness.

*iv.*      *Location of Assets*

Inverness' assets are comprised primarily of the contractual rights to distribute or otherwise exploit a library of films, largely produced by Morgan Creek Productions, Inc. ("**MCP**"), a Delaware corporation, in the Foreign Territory (collectively, together or separately,

the "**Rights**"). These Rights were acquired pursuant to assignment agreements with the producers of such movies (or assignees of such producers), including MCP and various Morgan Creek related special purpose vehicle production companies, in exchange for cash payments by Inverness. The exploitation of the Rights then takes place via distribution agreements (the "**Distribution Agreements**") with third parties, including Warner Brothers and NBC Universal, and through agents, such as Inverness' affiliate, Morgan Creek International B.V. ("**MCI BV**"). The Distribution Agreements typically concern distribution to movie theatres, home video markets and, in some cases, television markets in certain Foreign Territories and entitle Inverness to payment from their contract counterparties.

The bundle of rights created by a contract or agreement is an intangible personal property interest. <u>See</u> *ABKCO Industries, Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 674 (NY 1976). Such intangible personal property interests are deemed to be located "where the party of whom performance is required by the terms of the contract is located." *Id.* at 675. For example, in *ABKCO*, the New York Court of Appeals found that an English debtor was subject to attachment where its primary asset was a licensing agreement with a New York corporation, in which the debtor granted the New York corporation a general license to promote a movie it owned in exchange for 80% of the net profits received from such promotion. *Id.* Finding that the obligation of performance fell on the New York corporation, the court found that the debtor had a property interest in New York that was subject to attachment. *Id.*

Similarly, in *In re Board of Directors of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25 (Bankr. S.D.N.Y. 1999), the court applied the same principle in deciding on the propriety of a Bermudian reinsurance company's choice of venue for its petition, under the former section 304 of the Bankruptcy Code, to recognize an ancillary case in Bermuda to enforce a court-sanctioned

scheme of arrangement between the debtor and its creditors. The court found that the debtor's "principal place of assets", as required to establish venue under former 28 U.S.C. § 1410(c),[8] was in New York, and thus venue there was proper, where the debtor's primary assets were its contractual rights to payment from its retrocessionaires (parties obligated to pay under the agreements) under various Retrocession Treaties and the majority of the retrocessionaires were located in New York. _Id._

Here, the obligation to pay under the Distribution Agreements falls on various counterparties, who are located in various international jurisdictions. The contract counterparty for the majority of Inverness' library of films is Warner Brothers, located in the United States, the principal agent for distribution rights is MCI BV, incorporated in the Netherlands, and the third-party distributors of the films are located in various jurisdictions, including England, United Arab Emirates, Portugal, Romania, Croatia, the Philippines, Germany, the United States, and Belgium. However, the performance obligation under the Assignment Agreements, in which the film rights were assigned to Inverness in exchange for a cash payment, rest with Inverness, an entity located in Bermuda. Thus, to the extent that one jurisdiction can be deemed to be the location of Inverness' contractual rights, such jurisdiction should be Bermuda as the location of a majority of such rights.

### a. *Jurisdiction Whose Law Would Apply to Disputes*

The Bermuda Proceeding and matters relating to the liquidation of Inverness will be governed by Bermuda law under the Companies Act, although the Bermuda Court will apply,

---

[8] The former venue provision states, in pertinent part, "[a] case under section 304 of title 11, other than a case specified in subsection (a) or (b) of this section, may be commenced only in the district court for the district in which is located the principal place of business in the United States, or *the principal assets in the United States*, of the estate that is the subject of such case." 28 U.S.C. § 1410(c) (emphasis added); *see also* 1-4 COLLIER ON BANKRUPTCY P 4.04 ("Many of the cases decided under the superseded regime will remain relevant under the new statute . . .").

where appropriate, the relevant foreign law in connection with a creditor's claims or rights against Inverness or its property. Due to the diversity in the location of Inverness' contract counterparties, actions could be brought in a variety of jurisdictions under a variety of choice of law theories. As a result of the multitude of jurisdictions whose laws could apply to disputes between Inverness and its contract counterparties, this factor alone does not assist in determining a single center of main interests and should not be considered in ascertaining Inverness' center of main interest. See e.g., *In re Ernst & Young, Inc.*, 383 B.R. 773, 781 (Bankr. D. Col. 2008) (granting recognition of Canadian receivership proceeding as foreign main proceeding but finding that "[t]he final two *Bear Stearns* factors (location of the majority of the debtor's creditors and the jurisdiction whose law would apply to most disputes) are not critical to the COMI determination in this case.").

Ultimately, the foregoing analysis demonstrates that (i) Inverness is headquartered in Bermuda because it maintains no office other than its registered office in Bermuda, and the Petitioners are indisputably headquartered in Bermuda; (ii) Inverness' management, if it was not previously located in Bermuda, has certainly been relocated there out of necessity and in good faith as a result of the former management's conflict of interest; (iii) Inverness' creditors, while located in multiple jurisdictions, have identified Bermuda as the appropriate forum to address their claims and secure their collateral; (iv) Inverness' intangible personal property is located in multiple jurisdictions, but can be viewed as being located in Bermuda; and (v) the Bermuda Court is equipped to address any disputes over Inverness' property, regardless of which law applies. Viewing the totality of the relevant contacts between Inverness and various jurisdictions with which it has contacts and interests, it is clear that no jurisdiction other than Bermuda has a more plausible claim to be Inverness' center of main interests. Based on the foregoing, sufficient

evidence exists to demonstrate that Inverness' center of main interests is Bermuda and the Bermuda Proceeding is a foreign main proceeding.

### 3. In the Event the Bermuda Proceeding is not Recognized as a Foreign Main Proceeding, It should be Recognized as a Foreign Non-Main Proceeding

Even if the Bermuda Proceeding is not recognized as a foreign main proceeding, it nonetheless should be recognized as a "foreign nonmain proceeding" pursuant to section 1517(b), which provides that a foreign proceeding shall be recognized as a foreign non-main proceeding if it is pending in a country where the debtor has an establishment. 11 U.S.C. § 1517(b)(2). Section 1502 defines an "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). "Nontransitory economic activity" is not defined in the Bankruptcy Code, but the place in which such activity is conducted has been interpreted to mean "a local place of business." *In re Bear Stems*, 374 B.R. at 131. In determining whether the debtor has an "establishment" in a country, courts have considered the facts at the time of the filing of the Chapter 15 petition. *In re British Am.*, 425 B.R. at 915; *Lavie v. Ran*, 406 B.R. at 284-85.

The Petitioners submit that, in the event the Court finds that the Bermuda Proceeding in a non-main proceeding, Inverness indisputably has a "local place of business" and "establishment" in Bermuda. First, Inverness has maintained a registered office in Bermuda since its inception in 2003, from which, upon information and belief, various administrative tasks were performed for Inverness by professionals located in Bermuda. Second, Inverness holds intangible personal property rights and liabilities in Bermuda. Third, Inverness' creditors have registered their security interests in Inverness' property with the Bermuda Register of Companies. Thus, Inverness, prior to the appointment of the Petitioners, had many ties to and was established in Bermuda, including by maintaining a local place of business in Bermuda.

Moreover, since the appointment of the Petitioners as provisional liquidators, Inverness' business and operations are being consolidated in Bermuda for the purpose of winding-up Inverness. Specifically, the Petitioners have started and will continue to actively manage Inverness' business and assets from their Bermuda offices, including maximizing the value of Inverness' Distribution Agreements and other assets, preserving the value of Inverness' Assignment Agreements and other assets, and protecting the collateral underlying the Credit Agreement, all in pursuit of maintaining and realizing Inverness' assets for the benefit of its creditors. These activities, and others in connection with Inverness' winding-up of its business, including locating assets, reviewing available financial information, communicating with various parties connected with Inverness (including distributors, studios, the Guilds, the creditors and other various service providers to the Inverness), are being and will continue to be carried out from the Petitioners' Bermuda offices. Thus, Inverness continues to maintain a local place of business in Bermuda, and even if the Bermuda Proceeding is not a foreign main proceeding, which the Petitioners believe it is, it, at the very least, constitutes a foreign non-main proceeding.

**4.    The Petitioners Meet the Filing Requirements of Rule 1007(a)(4) of the Bankruptcy Rules**

In addition to the filing requirements of the Bankruptcy Code, the Petitioners have satisfied the filing requirements set forth in Bankruptcy Rule 1007(a)(4) by including the following as attachments to the Verified Petition: (i) "a corporate ownership statement containing the information described in Rule 7007.1" of the Bankruptcy Rules; and (ii) "a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of [Inverness], all parties to litigation pending in the United States in which [Inverness] is a party at the time of the filing of the petition, and all entities against whom

provisional relief is being sought under § 1519 of the Code." Fed. R. Bankr. P. 1007(a)(4); see Verified Petition, Ex. C.

### C.    Mandatory Relief Under Section 1520

Upon recognition of the Bermuda Proceeding as a foreign main proceeding, the Petitioners are automatically entitled to certain relief under section 1520(a).  Section 1520(a) provides that, upon recognition:

> (1)    sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;
>
> (2)    sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;
>
> (3)    unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552; and
>
> (4)    section 552 applies to property of the debtor that is within the territorial jurisdiction of the United States.

11 U.S.C. § 1520(a).

As these benefits flow automatically from the recognition of the Bermuda Proceeding as a foreign main proceeding, the Petitioners respectfully submit that no further showing is required, including without limitation, with respect to the benefits of the automatic stay provided for in section 362 of the Bankruptcy Code.  See 11 U.S.C. § 1520(a)(1); see also 11 U.S.C. § 362(a) (providing for an automatic stay of proceedings against the debtor and property of the estate).

### 1.    The Petition Requests Necessary and Appropriate Relief Pursuant to Section 1521(a) of the Bankruptcy Code

Upon recognition of a foreign proceeding, section 1521(a) authorizes the Court to "grant any appropriate relief" at the request of the foreign representative where necessary to effectuate

the purposes of Chapter 15 and to protect the assets of the debtor or the interests of the creditors, including,

- staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent not already stayed under section 1520;

- entrusting all of the Company's assets located within the territorial jurisdiction of the United States to the Petitioners, including the power to administer those assets in any way, to modify any agreements entered into regarding those assets and the right to transfer, encumber or otherwise dispose of such assets;

- staying execution against the debtor's assets to the extent not already stayed under section 1520;

- suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent not already stayed under section 1520;

- providing for examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations and liabilities; and

- granting any additional relief that may be available to a trustee, except for the relief available under sections 522, 544, 545, 547, 548, 550 and 724(a).

11 U.S.C. § 152l(a)(1), (a)(2), (a)(3), (a)(4) and (a)(7).

The Petitioners, as the foreign representatives of the Company, request relief under section 1521 to assist in the orderly winding-up of the Company in the Bermuda Proceeding. The relief sought in the Petition is necessary to effectuate the purposes of Chapter 15. This relief will ensure an orderly and non-discriminatory allocation of Inverness's assets and channel all claims against Inverness to the Bermuda Proceeding and thereby protect the interest of all creditors on a consistent and non-discriminatory basis, in accordance with section 1522(a). Were that process

to be disrupted by uncoordinated claim litigation or unilateral action by creditors against assets located in the United States, the injury to the Company and its creditors would be irreparable.

The Court may grant relief under section 1521 only if the interests of creditors and other interested entities, including the debtor and interested parties located outside of the United States, are sufficiently protected. 11 U.S.C. § 1522(a); *In re SPhinX*, 351 B.R. at 113 (noting that in enacting section 1522(a), "Congress directed the court to focus on the interests of all creditors and other interested parties, not just those of U.S. parties.").

Here, pursuant to section 1521(a), the Petitioners are requesting additional necessary relief, including (i) a permanent injunction enjoining all parties from executing against, interfering with or otherwise acting against Inverness or any of its assets, to the extent not stayed automatically under section 1520(a) and (ii) leave to conduct discovery pursuant to applicable provisions  and/or the Bankruptcy Rules concerning, *inter alia*, Inverness' assets, affairs, rights, obligations or liabilities.

### 2. The Requirements for a Permanent Injunction Are Satisfied in Accordance With Section 1521(e)

The standards, procedures and limitations applicable generally to an injunction also apply to relief sought under section 1521(a).  <u>See</u> 11 U.S.C. § 152l(e).  The relief sought in the Petition is warranted under the standard applicable in the Second Circuit for granting a permanent injunction.  That standard is essentially the same as the standard for a preliminary injunction, except that rather than demonstrate a likelihood of success on the merits, the movant must actually succeed on the merits. *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1035 (S.D.N.Y. 1995). In addition, the movant must make a showing of the likelihood of irreparable harm, <u>i.e.</u>, an injury that cannot be redressed through financial compensation. <u>*Id.*</u>  Irreparable harm must be likely and

imminent, not remote or speculative. _Id.._; _Civic Ass'n of the Deaf of New York City, Inc. v. Giuliani_, 915 F. Supp. 622, 631 (S.D.N.Y. 1996).

Irreparable harm to an estate exists where the orderly determination of claims and the fair distribution of assets are disrupted. See _e.g., Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B._, 825 F.2d 709, 713-14 (2d Cir. 1987); _Cunard S.S. Co. v. Salen Reefer Servs., AB_, 773 F.2d 452, 458 (2d Cir. 1985) ("Unless all parties in interest, wherever they reside, can be bound by the arrangement which it is sought to have legalized, the scheme may fail.") (citing _Canada S. Ry. Co. v. Gebhard_, 109 U.S. 527, 539 (1883)); _In re MMG, LLC_, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("As a rule . . . irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of the other creditors.").

The relief sought in the Petition may be obtained without undue hardship or prejudice to the rights of Inverness' creditors located in the United States. As shown in the documents submitted with the Petition, the Bermuda Proceeding contemplates a means of creditor participation. Each creditor is afforded adequate notice and an opportunity to be heard.

Here, the Petitioners are requesting relief in the form of a permanent injunction enjoining actions against the Company and its assets. Without the relief requested, the Bermuda Proceeding cannot be administered in a unified, fair and efficient manner that would protect the interests of all of Inverness' creditors, nor would the value of Inverness' assets be maximized. In particular, the Petitioners need complete control over Inverness' assets so that the values of such assets can be efficiently and expeditiously maximized for the benefit of Inverness and its creditors. Enjoining actions against Inverness' assets, whether by other creditors or Inverness' former principals, will protect such assets for the benefit of all of Inverness' creditors.

### 3. The Petitioners Request Discovery Pursuant to 1521(4)

Moreover, the Petitioners request discovery to locate any of Inverness' books and records that are in the United States, and to obtain information concerning Inverness' assets and obligations. The Petitioners need access to all the information, including documents, that evidence the Distribution Agreements, so that they can evaluate whether such assets are being properly administered, and to properly administer them for the benefit of all creditors. Section 1521(a)(4) authorizes, upon recognition, the "examination of witnesses, [and] the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities . . . ."[9] Accordingly, section 1521 expressly authorizes the Court to grant discovery, which is needed to properly administer the Company's estate.

### CONCLUSION

The Petitioners respectfully submit that the Petition satisfies the requirements for the recognition of the Bermuda Proceeding and for the injunctive and other relief sought therein. Unless the relief requested is granted, the Bermuda Proceeding will be undermined with the consequence of imminent and irreparable harm arising to the Company and its creditors through exposure to unilateral actions of creditors located in the United States in derogation of the collective interests embraced by the Bermuda Proceeding. In order to ensure equal and consistent treatment of all creditors, each must similarly be bound and the Company's assets similarly protected, irrespective of diversity of domicile or location.

---

[9] *See In re Lehman Re*, Case No. 09-14884 (JMP) (Bankr. S.D.N.Y. September 24, 2009) (authorizing Bermudian Joint Provisional Liquidators to take discovery in a Chapter 15 case); *In re Hughes*, 281 B.R. 224, 231 (Bankr. S.D.N.Y. 2002) (Bermuda joint liquidators, having commenced an ancillary proceeding in the U.S. under section 304 of the Bankruptcy Code, could take discovery of liquidating company's U.S.-based auditors).

**WHEREFORE**, the Petitioners respectfully request that this Court grant the relief requested in the Petition.

Respectfully submitted,

Dated:  May 3, 2011
      New York, New York

HOGAN LOVELLS US LLP

By: _/s/ Ira S. Greene_____
    Ira S. Greene
    Scott W. Reynolds
    875 Third Avenue
    New York, New York 10022
    Telephone: (212) 918-3000
    Facsimile: (212) 918-3100

    *Attorneys for the Petitioners*